COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Huff, Judges Decker and O'Brien
Argued at Alexandria, Virginia


LIZA MARIE PENCE

v.      Record No. 1567-15-4

GREGORY ALLEN PENCE


GREGORY ALLEN PENCE
                                                    MEMORANDUM OPINION* BY
v.      Record No. 1591-15-4                        CHIEF JUDGE GLEN A. HUFF
                                                    OCTOBER 18, 2016
LIZA MARIE PENCE


GREGORY ALLEN PENCE

v.      Record No. 1813-15-4

LIZA MARIE PENCE


            FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                        Louise M. DiMatteo, Judge

        Demian J. McGarry (Curran Moher Weis, P.C., on briefs), for Liza
        Marie Pence.

        Gregory L. Murphy (Vorys, Sater, Seymour and Pease, LLP, on
        briefs), for Gregory Allen Pence.


        Three consolidated appeals are taken from final orders of the Circuit Court of Arlington

County ("trial court") relating to the divorce of Liza Marie Pence ("wife") and Gregory Allen

Pence ("husband").  Wife asserts fourteen assignments of error to the trial court's equitable

distribution award.  Husband asserts three assignments of error to the trial court's rulings on

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

attorneys' fees, spousal support, and child support.  For the following reasons, this Court affirms in part and reverses in part.

## I.  BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).  So viewed, the evidence is as follows.[1]

Husband and wife married on June 9, 2001, in Fairfax County, Virginia.  The couple had three children:  K.M.P. (born December 5, 2001), G.A.P. (born June 30, 2003), and K.A.P. (born February 19, 2009).  Sharing of household responsibilities and child-rearing duties shifted between husband and wife over the course of their marriage, and in the later years of their marriage, husband assumed an increasing portion of the household duties and responsibilities.

A few years after marrying, husband started a business known as "Pence Quality Homes" ("PQH").  PQH built or renovated homes.  In the early years of the business, wife assisted in some of the office and bookkeeping responsibilities of PQH.  Additionally, wife was the beneficiary of a substantial trust fund established for her by her grandparents.  As a result, wife's separate trust fund was sometimes relied upon to support real estate loans for projects of PQH. During the course of their marriage, husband and wife acquired properties to be worked on by PQH, often utilizing that property as the marital residence during the renovation period.

Husband testified that until their marital breakdown which began "around 2012," wife had been attentive to him and to the children and did her best to help in the business.  Leading up

_____

[1] As the parties are fully conversant with the record in these cases, and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of these appeals.

to their separation in 2014, however, wife began expending increasingly large sums on personal travel and recreation and detaching herself from involvement in family and business affairs. In November 2013, husband confronted wife about an affair she was having with her personal trainer. Although wife promised to stop, in January 2014, husband discovered she had resumed the affair. By final divorce decree entered on September 4, 2015, husband was granted a divorce based on the ground of wife's adultery.

Incident to the divorce proceeding, the trial court conducted a hearing on equitable distribution and ordered distribution pursuant to its letter opinion dated July 23, 2015. In its opinion, the trial court found that "[wife] clearly became disenchanted with her role as wife and mother and was enjoying spending 'quality time' outside of the home." Furthermore, the trial court noted that "given the grounds upon which the Court is granting the divorce, [wife] dissolved more than the marriage – she dissolved their business relationship." After working through the factors of Code § 20-107.3(E), the trial court concluded that "[g]iven the overall contributions of [husband] to the business – he was the face of the business . . . it is clear that [husband] contributed more personal equity, financial risk, and personal good will than [wife] did to the endeavor." The trial court acknowledged that wife did make substantial contributions initially, but determined that husband "more than matched" these. Consequently, the trial court awarded much of PQH's property interests to husband, splitting the liability between husband and wife who equally benefitted from its operation during the marriage.

The trial court also denied husband's request for emergency spousal support, child support, and the parties' respective requests for attorney's fees and costs. In denying husband spousal support, the trial court reasoned that in light of husband's receipt of most of PQH's property in equitable distribution, husband should be able to generate sufficient income for his family again. In denying the parties' motions for attorneys' fees and costs, the trial court

concluded that both parties shared in the responsibility for the substantial fees and costs accrued and that an award of fees and costs was not warranted under the circumstances. Finally, in denying child support, the trial court relied upon its reasoning articulated in the previous rulings from the equitable distribution hearing, and concluded that "because of the earnings capabilities" neither husband nor wife should need child support payments from the other.

Husband and wife noted exceptions to the trial court's orders and wife filed a motion for reconsideration, which was not granted. This appeal followed.

## II. ANALYSIS

### A. Equitable Distribution Award

Wife has assigned error to fourteen aspects of the equitable distribution award. Her assignments, as grouped by wife, are as follows:

1. Assignments of Error 1 and 2: The trial court erred in making a disproportionate equitable distribution award to . . . [husband] and [in] using the fault grounds for divorce as a vehicle to punish [wife].
2. Assignments of Error 3, 4, and 6: The trial court erred when it considered the needs of [husband] in making its equitable distribution decision.
3. Assignment of Error 5: The trial court erred when it found no valuation was presented regarding the 29th Street property.
4. Assignment of Error 7: The trial court erred when it ordered [wife] to be liable for [fifty percent] of the lien on the 29th Street Property [while] at the same time awarding the property solely to [husband].
5. Assignment of Error 8: The trial court erred when it ordered [wife] to reimburse [husband] $22,500 to an account when there was no motion for an alternate valuation date presented as to the account, no evidence of waste and when the funds from which the $45,000 were taken were "no longer in existence" at the time of trial.
6. Assignment of Error 9: The trial court erred in failing to equitably divide [husband's] . . . IRA when there was evidence of its value as of the date of separation, evidence of [husband's] post-separation liquidation of said IRA, and [wife] filed a Motion for Alternate Valuation Date, for which the trial court failed to rule.

7. Assignment of Error 10: The trial court erred when it refused to receive into evidence [husband's] expert's business valuation report.
8. Assignment of Error 11: The trial court erred in classifying [husband's] [First Virginia Community Bank] stock as separate property because he failed to meet his burden of proof that the stock was not marital.
9. Assignment of Error 12: The trial court erred in ordering [wife] to be responsible for one-half of [husband's] 2012 federal tax liability when the evidence showed [husband] filed the return separately, the liability arose from [husband's] business for which [wife] was awarded no interest, and that [wife] had her own liability from the filing of her 2012 taxes.
10. Assignment of Error 13: The trial court erred in finding all of the jewelry marital and equally dividing it when there was evidence that a substantial amount of the jewelry was [wife's] separate property.
11. Assignment of Error 14: The trial court erred in failing to value, classify and divide wife's American Express and Chase Sapphire debts.

## 1. Standard of Review

Review of a trial court's equitable distribution decision is conducted under an abuse of discretion standard.

> "Fashioning an equitable distribution award lies within the sound discretion of the trial judge[,] and that award will not be set aside unless it is plainly wrong or without evidence to support it." "Virginia law does not establish a presumption of equal distribution of marital assets. It is within the discretion of the court to make an equal division *or to make a substantially disparate division of assets* as the factors outlined in Code § 20-107.3(E) require."

Torian v. Torian, 38 Va. App. 167, 181, 562 S.E.2d 355, 362 (2002) (emphasis added) (first quoting Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990), and then quoting Matthews v. Matthews, 26 Va. App. 638, 645, 496 S.E.2d 126, 129 (1998)). "On appeal, a trial court's equitable distribution award will not be overturned unless the Court finds 'an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award.'" Wiencko v. Takayama, 62 Va. App. 217,

229-30, 745 S.E.2d 168, 174 (2013) (quoting McIlwain v. McIlwain, 52 Va. App. 644, 661, 666 S.E.2d 538, 547 (2008)).  In light of this standard, wife's assignments of error are analyzed in turn below.

### 2.  Assignments of Error

#### a.  Assignments of Error 1 & 2:  Whether the trial court's award was punitive

In her first two assignments of error, wife claims that the trial court abused its discretion by making an award that is punitive in two ways:  (1) "in awarding [husband] approximately 102% of the marital assets when there was no evidence before the court to justify such a punitive and disproportionate result," and (2) "when it factored in the grounds for divorce in the equitable distribution of marital assets when there was no evidence presented that the fault ground of adultery . . . had any monetary impact on the marital estate or egregious non-monetary impact on the family."  In sum, wife argues that the trial court was in error to make a disproportionate award in favor of husband while at the same time finding that both he and wife contributed to these properties.  Furthermore, wife alleges that the only explanation for the trial court's ruling is that it was using the equitable distribution award to punish wife for committing adultery.  For the following reasons, this Court finds that the trial court's distribution was not punitive.

"The purpose of Code § 20-107.3 is to divide fairly the value of the marital assets acquired by the parties during marriage with due regard for both their monetary and nonmonetary contributions to the acquisition and maintenance of the property and to the marriage."  O'Loughlin v. O'Loughlin, 20 Va. App. 522, 524, 458 S.E.2d 323, 324 (1995).  While the trial court initially found that wife made contributions to the home and business over the course of their marriage, the trial court went on to find that "this changed over time."  The evidence showed that wife curtailed her contributions to the family and home early in the marriage such that "outside help" was needed for cooking, cleaning, and child care.  Further, by

- 6 -

the time of their separation, what little efforts wife had contributed to managing the books for PQH had entirely ceased. Additionally, although wife did make financial investments in the business in the beginning, the trial court found that "[husband] contributed more personal equity, financial risk, and personal good will" in the long term.

Furthermore, "while equitable distribution is not a vehicle to punish behavior, the statutory guidelines authorize consideration of [infidelity] as having an adverse effect on the marriage and justifying an award that favors one spouse over the other." O'Loughlin, 20 Va. App. at 527, 458 S.E.2d at 325. Code § 20-107.3(E)(5) provides that in making the division of property, the trial court is required to consider "[t]he circumstances and factors which contributed to the dissolution of the marriage, *specifically including any ground for divorce under the provisions of subdivision A(1) [adultery] . . . of § 20-91*." (Emphasis added). Therefore, this Court has specifically held "[t]he trial court may 'consider the negative impact of [an] affair on the well-being of the family." O'Loughlin, 20 Va. App. at 528, 458 S.E.2d at 326. In this case, the trial court appropriately found that wife's infidelity disrupted both the operation of the small family business and the well-being of the family. The trial court was not required to make an equal distribution of assets but acted well within its statutory discretion in considering the grounds for divorce and other evidence of each spouse's contributions.[2] The award of marital assets was neither plainly wrong nor without evidence to support it; accordingly, the trial court did not abuse its discretion.

b. Assignments 3, 4, and 6: Considering husband's need

In her third, fourth, and sixth assignments of error, wife argues that the trial court erred when it considered husband's need in making the equitable distribution award. Specifically,

---

[2] In considering wife's first assignment of error, this Court does not accept wife's premise that husband was awarded "approximately 102% of the marital assets."

wife contends that consideration of need is applicable only in determining spousal support and is not a factor upon which equitable distribution awards may be based. Wife alleges this error particularly with respect to the 29th Street property and the proceeds from the sale of a property located at 32nd Street, both of which were awarded to husband.

In awarding the property located at 29th Street in Arlington, Virginia ("29th Street"), to husband, the trial court stated that it found that the property was marital and was "used as collateral in the business just like all of the other projects were handled." The trial court also noted

> that this will adequately address the dissolution of marriage and consequent interruption of cash flow in the construction projects which could be forthcoming for [husband]. This would then create the necessary monetary environment for [husband] to avoid having to have spousal support from [wife] and therefore, I believe will right the financial ship for [husband] in the long term.

Regarding the proceeds associated with the PQH property located at 32nd Street in Arlington, Virginia ("32nd Street"), on wife's motion, proceeds from the sale of 32nd Street were held in escrow by the trial court during the pendency of the divorce action. In awarding the proceeds to husband, the trial court explained "the profits should be awarded to [husband] because [wife] did not perform any work on this project and for all the other reasons stated in this opinion; [husband] is equitably entitled to this money." For the following reasons, this Court finds that the trial court did not improperly consider husband's economic circumstances in making its equitable distribution award.

"The legislature enacted Code § 20-107.3 to divide the value of marital property between spouses based upon each spouse's contribution to the acquisition, preservation, or improvement of property obtained during the marriage." Lightburn v. Lightburn, 22 Va. App. 612, 619, 472 S.E.2d 281, 284 (1996). "The clear legislative intent . . . is to maintain an appropriate separation

between considerations of child or spousal support and considerations of an equitable distribution of marital wealth." Id. (quoting Williams v. Williams, 4 Va. App. 19, 24, 354 S.E.2d 64, 66 (1987)). Therefore, "no provisions within Code § 20-107.3 authorize or direct the trial judge to consider evidence of economic and emotional difficulties following the divorce." Id. at 620, 472 S.E.2d at 285.

Nevertheless, "[o]n appeal, a ruling is entitled to a presumption of correctness; a trial court is presumed to have known and properly applied the law, absent clear evidence to the contrary." Hodges v. Dep't of Soc. Servs, Div. of Child Support Enf't, 45 Va. App. 118, 141, 609 S.E.2d 61, 72 (2005). "Furthermore, we will not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977).

Reviewed in their proper context, this Court finds the trial court's allocations were not based on the "economic difficulties" of husband. Lightburn, 22 Va. App. at 620, 472 S.E.2d at 285. Although the trial court did express its belief that awarding 29th Street to husband would alleviate his need for spousal support, this statement, read in context, was the trial court's recognition that the property was part of the PQH enterprise which husband would continue to own and operate for his livelihood. In its letter opinion, the trial court explained that of the two, husband "was the face of the business" and "contributed more personal equity, financial risk and personal good will than [wife] did to the endeavor." It was in this light that the trial court awarded 29th Street, collateral for PQH, and the 32nd Street proceeds, a PQH project, to husband. Therefore, considered in their proper context, this Court finds no error in the trial court's considerations.

c.  Assignment of Error 5:  Value of 29th Street property

In her fifth assignment of error, wife asserts the trial court erred when it found that no valuation was presented regarding 29th Street.  Prior to the hearing, the parties had signed a stipulation, that was entered into the trial court's record and signed by the court on May 18, 2015, in which the parties agreed that 29th Street's value was $665,000.  During the hearing, the evidence demonstrated that husband and wife had purchased 29th Street to be rebuilt and sold by PQH but the stipulation of its value was not submitted into evidence.  Subsequently, the trial court awarded 29th Street to husband, concluding that 29th Street was marital and was "used as collateral in the business just like all of the other projects were handled."  The trial court further found that there was no evidence of its current value.

On appeal, wife cites to the stipulation and alleges error to the trial court's finding that there was no evidence of 29th Street's value.  For the following reasons, this Court finds that if the trial court erred, such error was harmless.

"Virginia's statute 'mandates' that trial courts determine the ownership and value of all real and personal property of the parties."  Bowers v. Bowers, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987).  "[A] court may not arbitrarily refuse to classify or evaluate marital or separate property where sufficient evidence to do so is in the record."  Id. at 618, 359 S.E.2d at 551.  Nevertheless, where "[t]here [is] no showing that the value of this property was relevant or material to the equitable distribution determination . . . , the failure to comply with the requirement of Code § 20-107.3(A) [is] harmless error."  McDavid v. McDavid, 19 Va. App. 406, 413, 451 S.E.2d 713, 718 (1994).

> Finding an error by the court does not end our inquiry . . . .  When this Court finds that error has been committed by a trial court, we are required to consider whether the error was harmless.  Code § 8.01-678 provides:  "When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial

- 10 -

on the merits and substantial justice has been reached, no judgment shall be arrested or reversed."

Milam v. Milam, 65 Va. App. 439, 459, 778 S.E.2d 535, 544-45 (2015).

In this case, even if the trial court erred in not finding a value for 29th Street, this error was harmless because it did not affect the trial court's award of 29th Street nor the division of the remaining marital property owned by the parties. The trial court awarded 29th Street to husband based on the property's use by PQH as a financing vehicle. After classifying this property as marital, the trial court then appropriately considered the factors of Code § 20-107.3(E), including "the contributions . . . of each party in the acquisition and care and maintenance of such marital property," to award 29th Street to husband. Even if it were error for the trial court not to consider the stipulated value of 29th Street,[3] its value was not relevant or material to the trial court's award. "[T]here is no presumption of equal distribution" in an equitable distribution award, and the trial court is instead required to make its award based on a consideration of the factors in Code § 20-107.3, which the trial court did in this case. Papuchis v. Papuchis, 2 Va. App. 130, 132, 341 S.E.2d 829, 830-31 (1986). Therefore, this Court finds that any error in not valuing 29th Street was harmless.

---

[3] Agreeing to a stipulation may not necessarily admit that stipulation into evidence automatically. See, e.g., 2 Paul C. Giannelli et al., Courtroom Criminal Evidence § 3101 (5th ed. 2015) ("In many jurisdictions, the stipulation is not 'in evidence' simply because the judge 'accepted' the stipulation at a pretrial conference. The judge's acceptance of the stipulation gives both parties the right to introduce the stipulation at trial, but *one party must exercise that right before the stipulation formally becomes part of the trial record*." (emphasis added)).

> Virginia's trial court may, without doing violence to [Code § 20-107.3], make a monetary award without giving consideration to the classification or valuation of every item of property, where the parties have been given a reasonable opportunity to provide the necessary evidence . . . but through their lack of diligence have failed to do so.

Bowers, 4 Va. App. at 618, 359 S.E.2d at 551.

- 11 -

d.  Assignment of Error 7:  Apportionment of 29th Street lien

In her seventh assignment of error, wife contends that "[t]he trial court erred when it ordered [wife] to be liable for [fifty percent] of the lien on the 29th Street Property [while] at the same time awarding the property solely to [husband]."  Specifically, wife argues that Code § 20-107.3(C) "*empowers* the trial judge to order" the party receiving marital property to "'assume any indebtedness secured by the property'" and that the trial court abused its discretion by ordering wife to remain on the mortgage for 29th Street because, as a result, wife remains entangled in financial affairs with husband.

At trial, however, the evidence demonstrated that husband and wife would use the equity in 29th Street as collateral to finance PQH projects which in turn provided a livelihood for the family.  For the following reasons, this Court affirms the trial court's ruling.

Code § 20-107.3(C) provides, in relevant part,

> The court may, based upon the factors listed in subsection E, divide or transfer or order the division or transfer, or both, of jointly owned marital property, jointly owed marital debt, or any part thereof.  The court shall also have the authority to apportion and order the payment of the debts of the parties, or either of them, that are incurred prior to the dissolution of the marriage, based upon the factors listed in subsection E.
> As a means of dividing or transferring the jointly owned marital property, *the court may transfer or order the transfer of real or personal property or any interest therein to one of the parties*, permit either party to purchase the interest of the other and direct the allocation of the proceeds, provided the party purchasing the interest of the other agrees to assume any indebtedness secured by the property, or order its sale by private sale by the parties, through such agent as the court shall direct, or by public sale as the court shall direct without the necessity for partition.

(Emphasis added).  "[T]he language of subsection (C) is not mandatory."  Alphin v. Alphin, 15 Va. App. 395, 403, 424 S.E.2d 572, 577 (1992).  "Subject to the[] enumerated statutory factors, 'this division or transfer of jointly owned marital property, [the apportionment of marital debts,]

and the amount of any monetary award, is within the sound discretion of the trial court.'" von Raab v. von Raab, 26 Va. App. 239, 246, 494 S.E.2d 156, 159 (1997) (quoting Dietz v. Dietz, 17 Va. App. 203, 216, 436 S.E.2d 463, 471 (1993)).

The trial court did not abuse its discretion when it awarded husband 29th Street while requiring both husband and wife to remain liable on the mortgage. Although Code § 20-107.3(C) *permits* the trial court to require the receiving party to assume any indebtedness, allocation of debt remains within the sound discretion of the trial court. The apportionment of debt ordered by the trial court reflected the value received during the marriage by both husband and wife as a result of 29th Street being "used as collateral in the business."

Wife, nevertheless, relies on Bomar v. Bomar, 45 Va. App. 229, 609 S.E.2d 629 (2005), in support of her argument. Bomar, however, is distinguishable from the case at bar. In Bomar, the trial judge "*erroneously believed* [Code § 20-107.3] did not permit him to order refinancing or other safeguards when he ordered the transfer of the marital residence to the wife." Id. at 238, 609 S.E.2d at 634. The error in Bomar was a misinterpretation of law, which by definition is an abuse of discretion. Id. at 236, 609 S.E.2d at 632. No such misunderstanding or misapplication of law is present in this equitable distribution award by the trial court. Neither is the trial court's ruling plainly wrong or without supporting evidence. Accordingly, the trial court did not abuse its discretion in awarding 29th Street to husband while leaving the debt to be shared between them.

e. Assignment of Error 8: $45,000 wife removed from PQH

In her eighth assignment of error, wife contends that the trial court erred in ordering her to reimburse husband for half of the $45,000 she removed from the PQH account. During the hearing, wife stipulated that in December 2013, she removed $45,000 from the proceeds of a PQH project. Wife testified that she transferred the funds from the business account to husband

- 13 -

and wife's joint account and from their joint account into her personal account to pay off her Visa card, mentioning that there were living expenses and "large bills that were due."

On appeal, wife contends that because the funds no longer existed at the time of the equitable distribution hearing and husband did not move for an alternative valuation date, the trial court erred when it required wife to repay half of the funds. Wife maintains that the trial court had no authority to order reimbursement in the absence of such a motion or a finding of waste or dissipation. For the following reasons, this Court affirms the trial court's ruling.

Although generally only the property owned by the parties at separation is subject to distribution, "in the case of assets wasted in anticipation of separation or divorce, equity can only be accomplished *if the party who last had the funds is held accountable* for them." Clements v. Clements, 10 Va. App. 580, 586, 397 S.E.2d 257, 261 (1990) (emphasis added).

> Dissipation occurs "where one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown." Once the aggrieved spouse shows that marital funds were either withdrawn or used after the breakdown, *the burden rests with the party charged with dissipation to prove that the money was spent for a proper purpose*.

Id. (emphasis added) (quoting Hellwig v. Hellwig, 426 N.E.2d 1087, 1094 (Ill. App. Ct. 1981)).

> [T]he burden is on the party who last had the funds to establish by a preponderance of the evidence that the funds were used for living expenses or some other proper purpose. If the party is unable to offer sufficient proof, the court must value the property at a date other than the date of the evidentiary hearing so as to achieve an equitable result.

Id. at 587, 397 S.E.2d at 261. Further, factor (10) of Code § 20-107.3(E) permits direct consideration of "[t]he use or expenditure of marital property by either of the parties for a nonmarital separate purpose or the dissipation of such funds, when such was done in anticipation of divorce or separation or after the last separation of the parties."

- 14 -

The trial court did not err in requiring wife to repay half of the funds. Considering the parties separated January 3, 2014, and that husband discovered wife had been engaging in the extramarital affair in November 2013 and again in January 2014, the evidence was sufficient to find that wife removed the $45,000 in anticipation of the separation and divorce. The burden was then on wife to "prove that the money was spent for a proper purpose" by a preponderance of the evidence. Clements, 10 Va. App. at 586-87, 397 S.E.2d at 261.

The trial court did not err in finding that wife failed to satisfy this burden. Wife testified that she deposited the monies in her personal account together with monies from her trust fund. The evidence also demonstrated wife expended funds on personal vacations and gifts that contributed to undermining the marriage. The evidence was contradictory, and she was unable to trace the $45,000 to show that it was applied to "living expenses or some other proper purpose." Id. at 587, 397 S.E.2d at 261. Accordingly, the trial court did not abuse its discretion in requiring wife to reimburse half of the $45,000 that was removed.

### f. Assignment of Error 9: Classification of husband's IRA

In her ninth assignment of error, wife argues "[t]he trial court erred in failing to equitably divide [husband's] . . . IRA when there was evidence of its value as of the date of separation, evidence of [husband's] post-separation liquidation of said IRA and [wife] filed a Motion for Alternate Valuation Date, for which the trial court failed to rule." Husband responds that the IRA was not subject to division because it had no value at the time of the evidentiary hearing and the funds were spent on support of the family while litigation was pending.

The evidence presented at the hearing demonstrated that as a result of the 32nd Street proceeds being held in escrow by the trial court, husband had liquidated all but fifteen dollars of his IRA account "to pay for household bills and mortgages and a truck note, and things for the children." Husband further testified that by the time of the hearing, the remaining IRA funds

- 15 -

would be entirely depleted by taxes and penalties for early withdrawal. For this reason, wife had filed a motion for an alternative valuation date for the IRA account, seeking to value it as of the date of separation. No ruling was made on her motion. Notwithstanding the evidence received, the trial court did not address husband's IRA in the equitable distribution award. For the following reasons, this Court finds that the trial court abused its discretion in failing to address the IRA.

Code § 20-107.3(A) provides, "upon request of either party [the trial court] *shall* determine the legal title . . . and the ownership and value of all property, real or personal, tangible or intangible, of the parties." (Emphasis added). Pertinent to this case, an IRA account created or added to "during the marriage is presumed to be marital property" and "a court may not arbitrarily refuse to classify or evaluate marital or separate property where sufficient evidence to do so is in the record." Bowers, 4 Va. App. at 615, 618, 359 S.E.2d at 550, 551.

In this case, no equitable distribution ruling was made by the trial court in spite of wife's motion and notwithstanding the evidence presented regarding the IRA and the use of funds. It may be that the IRA cannot be classified because it no longer existed due to husband's expenditures and that husband's expenditures did not amount to waste or dissipation; however, the trial court's failure to issue any order as to the IRA was an abuse of the court's discretion. On remand, the trial court is instructed to rule on the classification, valuation, and distribution of husband's IRA account and on wife's motion for an alternative valuation date.

g. Assignment of Error 10: Admission of business valuation report

In her tenth assignment of error, wife argues that the trial court erred when it refused to admit "[husband]'s expert's business valuation report" as hearsay. Notably, although husband's expert witness was identified as such for purposes of discovery, during which time he created a preliminary report on the value of PQH, he was not identified by husband to offer testimony at

- 16 -

trial. Nevertheless, wife contends that this report should have been admitted as a party

admission because the report was prepared by a witness designated as an expert witness for

husband. For the following reasons, this Court affirms the trial court's ruling.

"A statement made by a party is admissible in evidence against him. 'An admission

deliberately made, precisely identified and clearly proved affords evidence of a most satisfactory

nature and may furnish the strongest and most convincing evidence of truth.'" Goins v.

Commonwealth, 251 Va. 442, 461, 470 S.E.2d 114, 127 (1996) (quoting Tyree v. Lariew, 208

Va. 382, 385, 158 S.E.2d 140, 143 (1967)). "In the case of a party admission, the credibility of

the extrajudicial declarant is not an issue affecting the admissibility of the statement, because *the*

*party need not cross-examine his own statement* in order to be in a position to deny, contradict,

or explain the statement." Id. (emphasis added).

Rule of Evidence 2:803(0) encompasses this rule in Virginia. Specifically the rule makes

admissible

> [a] statement offered against a party that is (A) the party's own
> statement, in either an individual or a representative capacity, or
> (B) a statement of which the party has manifested adoption or
> belief in its truth, or (C) a statement *by a person authorized by the*
> *party* to make a statement concerning the subject, or (D) a
> statement by the party's agent or employee, made during the term
> of the agency or employment, concerning a matter within the scope
> of such agency or employment, or (E) a statement by a
> co-conspirator of a party during the course and in furtherance of
> the conspiracy.

Va. R. Evid. 2:803(0). (emphasis added). Relevant to subsection (C), to authorize means "1. To

give legal authority; to empower. 2. To formally approve; to sanction." Authorize, Black's Law

Dictionary (9th ed. 2009). Thus, "[t]he party admission rule includes not only statements made

by the party himself or herself, but also statements of other persons" if the person "*had authority*

- 17 -

to make such statements" on the party's behalf. Barr v. S.W. Rodgers Co., 34 Va. App. 50, 59, 537 S.E.2d 620, 624 (2000) (emphasis added).

While no Virginia opinions have directly addressed the application of the party admission exception to testimony of an expert witness, a federal court of appeals squarely addressed this concern in Kirk v. Raymark, Indus., Inc., 61 F.3d 147 (3d Cir. 1995). In Kirk, the court rejected the appellant's argument that the out-of-court statement of an opposing party's expert witness was an admission by the opposing party. Kirk, 61 F.3d at 164. Analyzing Federal Rule of Evidence 801(d)(2)(C),[4] the court reasoned that the rule requires the declarant to effectively be an agent of the party and thus "precludes the admission of the prior testimony of an expert witness where, as normally will be the case, the expert has not agreed to be *subject to the client's control* in giving his or her testimony." Id. (emphasis added). The court first found that "[i]n theory, despite the fact that one party retained and paid for the services of an expert witness, expert witnesses are supposed to testify impartially in the sphere of their expertise. Thus, one can call an expert witness *even if one disagrees* with the testimony of the expert." Id. (emphasis added). Therefore, "[b]ecause an expert witness is charged with the duty of giving *his or her* expert *opinion* regarding the matter before the court, we fail to comprehend how an expert witness, who is not an agent of the party who called him, can be authorized to make an admission for that party." Id.

Similarly, in this case, this Court finds that the trial court did not abuse its discretion when it refused to admit husband's preliminary expert witness' report as an admission of husband. Virginia Rule of Evidence 2:702 and Code § 8.01-401.3 provide that expert testimony

---

[4] "A statement that meets the following conditions is not hearsay: . . . The statement is offered against an opposing party and: . . . was made by a person whom the party authorized to make a statement on the subject." Fed. R. Evid. 801(d)(2)(C).

is testimony of one who is qualified as an expert in a particular field, and consists of "opinions of the witness" offered to assist the trier of fact to understand the evidence or to determine a fact in issue. An expert witness, therefore, is expected to testify to his or her own opinion concerning the issues presented and not the opinion of the party.

Wife argues that this Court should instead adopt the ruling in Yarbrough's Dirt Pit, Inc. v. Turner, 65 S.W.3d 210, 212 (Tex. App. 2001), in which a Texas appellate court held that the statement of a party's expert witness on a subject is admissible against the party if the expert was hired to speak on the party's behalf regarding that subject. 65 S.W.3d at 214.[5] Even if this Court were to adhere to Yarbrough's analysis, however, it would not make husband's expert's report admissible in this case. The issue in Yarbrough's was whether the defense expert witness' *deposition* testimony was admissible as the defendant's own statement in a *summary judgment motion*. Id. The court reasoned that because the expert was designated as the defense's expert witness to offer sworn testimony on the issue of plaintiff's negligence, the conclusions reached by the expert regarding plaintiff's negligence were necessarily admissions by the defendant. Id.

In the instant case, however, husband's expert witness was not identified as a trial witness for husband thereby suggesting that the expert's opinions were not that of husband. Unlike Yarbrough's, husband's expert's report was not even offered as sworn testimony in a deposition or otherwise offered by husband as evidence during the trial. Therefore husband's expert, only identified in discovery but not as a trial witness, was not "authorized," "sanctioned" or "empowered" to speak on husband's behalf and his report could not appropriately be considered

---

[5] Notably, Yarbrough's conclusion has been questioned by another Texas appellate court, albeit in an unpublished opinion. McCluskey v. Randall's Food Mkts., Inc., No. 14-03-01087-CV, 2004 Tex. App. LEXIS 9178, at *10 (Tex. App. Oct. 19, 2004).

husband's own statement. Consequently, the trial court did not abuse its discretion in finding that his report was inadmissible.

h. Assignment of Error 11: Classification of stock

In her eleventh assignment of error, wife argues that "[t]he trial court erred in classifying [husband's] [First Virginia Community Bank] stock as separate property because he failed to meet his burden of proof that the stock was not marital." During the hearing, the evidence established that 3,000 shares of First Virginia Community Bank stock ("FVC stock"), valued at $54,000, were held in husband's name and had been purchased during the marriage with PQH funds. Husband admitted that PQH funds were commingled with marital funds and did not offer evidence that the stock should be considered his separate property. Notwithstanding, the trial court classified the FVC stock as husband's separate property.

On appeal, wife contends that the stock was presumed marital property, and the trial court erred in classifying it as separate property without sufficient evidence to rebut the presumption. For the following reasons, this Court finds the trial court abused its discretion.

"All property acquired by either spouse during the marriage is presumed to be marital property in the absence of satisfactory evidence that it is separate property." Stroop v. Stroop, 10 Va. App. 611, 614-15, 394 S.E.2d 861, 863 (1990). "Separate property is that acquired by either party (1) 'before the marriage,' (2) 'during the marriage by bequest, devise, descent, survivorship, or gift' from someone other than the other spouse and (3) 'during the marriage in exchange for or from the proceeds of sale of separate property,' if maintained as separate property." Dietz, 17 Va. App. at 209, 436 S.E.2d at 467 (quoting Code § 20-107.3(A)(1)). Notwithstanding, "[w]hen marital property and separate property are commingled into newly acquired property resulting in the loss of identity of the contributing properties, the commingled property shall be deemed transmuted to marital property." Code § 20-107.3(A)(3)(e). "The

- 20 -

party claiming that property should be classified as separate has the burden to produce evidence to rebut [the] presumption." Stroop, 10 Va. App. at 615, 394 S.E.2d at 863.

This Court finds the trial court erred in its classification of the FVC stock as husband's separate property. At trial, husband admitted that the FVC stock was purchased during the marriage with PQH funds, which were commingled with marital assets, and did not offer evidence that the FVC stock was his separate property. Furthermore, the trial court did not articulate any reason for finding the presumption had been rebutted. Accordingly, the FVC stock is presumed marital and the trial court erred in classifying it as husband's separate property. For this reason, this Court reverses the classification of the FVC stock as husband's separate property and remands the issue to the trial court for equitable distribution as marital property.

i. Assignment of Error 12: Apportioning husband's 2012 tax liability

In her twelfth assignment of error, wife argues "[t]he trial court erred in ordering [wife] to be responsible for one-half of [husband's] 2012 federal tax liability when the evidence showed [husband] filed the return separately, the liability arose from [husband's] business for which [wife] was awarded no interest, and that [wife] has her own [2012 tax] liability." For the following reasons, this Court affirms the trial court's ruling.

As a general rule, "[m]arital debt is (i) all debt incurred in the joint names of the parties before the date of the last separation of the parties . . . and (ii) all debt incurred in either party's name after the date of the marriage and before the date of the last separation of the parties." Code § 20-107.3(A)(5). Code § 20-107.3(C) expressly permits the trial court to divide "jointly owed marital debt." "The court shall also have the authority to apportion and order the payment of the debts of the parties, or either of them, that are incurred prior to the dissolution of the marriage, based upon the factors listed in subsection E." Code § 20-107.3(C).

- 21 -

"However, to the extent that a party can show by a preponderance of the evidence that the debt, . . . was incurred, . . . in whole or in part, for a nonmarital purpose, the court may designate the entire debt as separate or a portion of the debt as marital and a portion of the debt as separate." Code § 20-107.3(A)(5). "Subject to the[] enumerated statutory factors, 'this division or transfer of jointly owned marital property, [the apportionment of marital debts,] and the amount of any monetary award, is within the sound discretion of the trial court.'" von Raab, 26 Va. App. at 246, 494 S.E.2d at 159 (quoting Dietz, 17 Va. App. at 216, 436 S.E.2d at 471).

This Court finds the trial court did not abuse its discretion in equitably dividing husband's 2012 tax liability. The tax liability on PQH income, from which both parties benefitted, was incurred prior to the date of separation. Regardless of whether the parties agreed to file their taxes separately, as wife claims, the liability is marital and subject to the court's equitable division. An agreement to file separately is not evidence that the liability was incurred for a nonmarital purpose or should otherwise be deemed husband's separate debt. Thus the trial court appropriately acted within its statutory discretion to apportion the liability.

### j. Assignment of Error 13: Jewelry classified as marital

In her thirteenth assignment of error, wife argues that the trial court erred in classifying all of their jewelry as marital property when there was evidence that much of it was wife's separate property. At the hearing, husband testified that at least $200,000 worth of jewelry purchased was marital property, indistinguishably commingled with jewelry purchased with trust fund money. Wife first testified similarly, stating that she could name the jewelry that was purchased but because her trust fund income was commingled with marital funds, she could not tell which jewelry was purchased with what money. Subsequently, however, wife tried to distinguish certain pieces of jewelry as her separate property by stating their approximate value,

identifying which pieces were inherited, and asserting who currently owned each piece. For the following reasons, this Court affirms the trial court's ruling.

"All property acquired by either spouse during the marriage is presumed to be marital property in the absence of satisfactory evidence that it is separate property." Stroop, 10 Va. App. at 614-15, 394 S.E.2d at 863. "Separate property is that acquired by either party (1) 'before the marriage,' (2) 'during the marriage by bequest, devise, descent, survivorship, or gift' from someone other than the other spouse and (3) 'during the marriage in exchange for or from the proceeds of sale of separate property,' if maintained as separate property." Dietz, 17 Va. App. at 209, 436 S.E.2d at 467 (quoting Code § 20-107.3(A)(1)).

> When marital property and separate property are commingled into newly acquired property resulting in the loss of identity of the contributing properties, the commingled property shall be deemed transmuted to marital property. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, the contributed property shall retain its original classification.

Code § 20-107.3(A)(3)(e).

"The party claiming that property should be classified as separate has the burden to produce evidence to rebut [the] presumption." Stroop, 10 Va. App. at 615, 394 S.E.2d at 863. "[I]f the [recipient of the property] presents sufficient evidence to rebut the statutory presumption of marital property, and the other party presents no evidence to the contrary, . . . the presumption is rebutted." Huger v. Huger, 16 Va. App. 785, 788, 433 S.E.2d 255, 257 (1993).

Notwithstanding, "testimony, although uncontradicted, may be disbelieved where it is inherently improbable, inconsistent with circumstances in evidence, or somewhat contradictory in itself, *especially where the witness is a party*." Turner, 14 Va. App. at 431-32, 417 S.E.2d at 887 (emphasis added). In the end, "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that

- 23 -

evidence as it is presented." McKee v. McKee, 52 Va. App. 482, 492, 664 S.E.2d 505, 510 (2008) (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995)).

This Court finds the trial court did not abuse its discretion in classifying the jewelry as marital property. The trial court, hearing the conflicts in wife's testimony, was entitled to discredit wife's uncertain testimony and adopt husband's testimony that all the jewelry had been commingled and was marital. Therefore, the trial court did not abuse its discretion in finding that the jewelry was marital property and subject to equitable distribution.

k. Assignment of Error 14: Classification of wife's credit cards

In her fourteenth assignment of error, wife argues "[t]he trial court erred in failing to value, classify and divide [wife's] American Express and Chase Sapphire debts." The evidence established that as of the separation date, wife's Chase Sapphire credit card had a balance of $41,913.68, and her American Express credit card had a balance of $19,667.79. Both statements included purchases that were made prior to the date of separation. On cross-examination, however, certain charges, including Nordstrom, Amazon, and expenses on jewelry, personal travel, and plastic surgery were shown to be personal purchases. The trial court made no ruling on this credit card debt.

On appeal, wife contends that it was error for the trial court not to classify this debt because the debts were incurred during the marriage. For the following reasons, this Court finds that the trial court abused its discretion in failing to address the credit card debt.

As a general rule, "[m]arital debt is . . . (ii) all debt incurred in either party's name after the date of the marriage and before the date of the last separation of the parties." Code § 20-107.3(A)(5).

> However, to the extent that a party can show by a preponderance of the evidence that the debt, . . . was incurred, . . . in whole or in part, for a nonmarital purpose, the court may designate the entire debt as separate or a portion of the debt as marital and a portion of the debt as separate.

Id.

As part of the equitable distribution award, the trial court "*shall* determine the nature of all debts of the parties, or either of them, and shall consider which of such debts is separate debt and which is marital debt." Code § 20-107.3(A)(ii) (emphasis added). "[A] court may not arbitrarily refuse to classify or evaluate marital or separate property where sufficient evidence to do so is in the record." Bowers, 4 Va. App. at 618, 359 S.E.2d at 551.

This Court finds that the trial court erred in not classifying the debts incurred on wife's credit cards. Because the credit card debt was incurred during the marriage and before the date of separation there is a presumption that the debt was marital. This presumption may have been rebutted by the evidence that the charges were incurred for wife's nonmarital purposes, but the trial court, having heard the evidence, is best suited to determine whether and to what extent the evidence established the credit card balances to be marital or separate. It was error, therefore, for the trial court not to classify the debt in the equitable distribution award. This Court remands the issue of the two credit card balances for such determination by the trial court.

### B. Attorney fees and costs

In his first assignment of error, husband argues that the trial court abused its discretion in failing to award attorney fees where wife "created false claims and burdensome discovery demands." In denying attorney fees to either party, the trial court reasoned that the fees were "staggering and outstrip the relatively non-complex nature of this litigation" but found there was "no justification for fees either way." For the following reasons, this Court affirms the trial court's decision.

- 25 -

"In Virginia, Code §§ 20-79(b) and 20-99(5) provide the statutory basis for the broad discretionary authority circuit courts have to award attorney's fees and other costs as the equities of a divorce case and its ancillary proceedings may require." Tyszcenko v. Donatelli, 53 Va. App. 209, 222, 670 S.E.2d 49, 56 (2008). "An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987).

"The key to a proper award of counsel fees is reasonableness under all the circumstances." Lightburn v. Lightburn, 22 Va. App. 612, 621, 472 S.E.2d 281, 285 (1996) (citing McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985)). "Rather than following a statutory scheme, in determining whether to award attorney's fees the trial court considers 'the circumstance of the parties' and the 'equities of the entire case.'" Taylor v. Taylor, 27 Va. App. 209, 217, 497 S.E.2d 916, 920 (1998) (first quoting Barnes v. Barnes, 16 Va. App. 98, 106, 428 S.E.2d 294, 300 (1993), and then quoting Davis v. Davis, 8 Va. App. 12, 17, 377 S.E.2d 640, 643 (1989)).

Under the circumstances of this case, this Court finds the trial court did not abuse its discretion in denying attorney fees and costs to husband. Although husband claims that wife's discovery tactics were abusive and costly, and therefore warrant a fee award, the line separating discovery abuse and legitimate trial tactics is often narrow, and the differentiation is best left to the sound discretion of the trial court, where the tactics were employed. In the instant case, the trial court declined to award fees or costs to either side, observing that excesses contributing to high attorney fees were not limited to one side. Finding no abuse of discretion by the trial court, this Court affirms its ruling.

C.  Denial of Spousal and Child Support

1.  Spousal Support

In his second assignment of error, husband argues the trial court abused its discretion when it denied him emergency spousal support.  Specifically, husband contends that the trial court misjudged the ability of the equitable distribution award to meet his financial needs and erroneously denied him spousal support without a legal basis.  Notably, husband does not assert that the trial court neglected to consider the requisite factors but instead argues that in considering those factors, the trial court's decision did not comport with his financial need.

In its letter opinion, the trial court worked through the factors of Code § 20-107.1 and concluded that it would deny spousal support to husband because it found that he was capable of generating sufficient income to provide for his family through the construction business.  In light of the properties awarded to husband in equitable distribution and husband's past successes with the business, the trial court reasoned that husband would be able to earn an adequate income and would not require financial support from wife.  For the following reasons, this Court affirms the ruling of the trial court.

> Where a claim for support is made by a party who has been held blameless for the marital breach, the law imposes upon the other party a duty, within the limits of his or her financial ability, to maintain the blameless party according to the station in life to which that party was accustomed during the marriage.  In fixing the amount of the spousal support award, a review of all of the factors contained in Code § 20-107.1 is mandatory, and the amount awarded must be fair and just under all of the circumstances of a particular case.  *When the record discloses that the trial court considered all of the statutory factors, the court's ruling will not be disturbed on appeal unless there has been a clear abuse of discretion.*  We will reverse the trial court only when its decision is plainly wrong or without evidence to support it.

Gamble v. Gamble, 14 Va. App. 558, 573-74, 421 S.E.2d 635, 644 (1992) (emphasis added) (citations omitted).

"Code § 20-107.1[(E)(9)] requires the trial court in setting spousal support to consider the 'earning capacity' of the parties. Although 'earning capacity' necessarily includes actual earnings, it is a broader concept that allows the trial court to consider more than actual earnings." Frazer v. Frazer, 23 Va. App. 358, 378, 477 S.E.2d 290, 300 (1996).

> The spousal support award, however, "must be based upon the circumstances in existence at the time of the award." The relevant time period includes the immediate past, *as well as the "'immediate or reasonably foreseeable future*.'" A spousal support award may not be "premised upon the occurrence of an uncertain future circumstance."

Barker v. Barker, 27 Va. App. 519, 528, 500 S.E.2d 240, 244 (1998) (emphasis added) (first quoting Payne v. Payne, 5 Va. App. 359, 363, 363 S.E.2d 428, 430 (1987), then quoting Srinivasan, 10 Va. App. at 735, 396 S.E.2d at 679, and then quoting Jacobs v. Jacobs, 219 Va. 993, 995-96, 254 S.E.2d 56, 58 (1979)).

The trial court did not err in denying spousal support in view of husband's business capabilities and the resources being awarded to him in equitable distribution. The trial court reviewed the factors under Code § 20-107.1(E) and noted that husband "has proven his ability to turn a profit and provide for his family in the construction business." In light of the funds released from escrow and the properties awarded to husband, the trial court determined that husband's *earning capacity* would return to or near its pre-divorce level, thereby obviating any need for spousal support from wife. The trial court's denial of spousal support was not plainly wrong or without evidence to support it. Accordingly, this Court affirms the trial court's decision not to award spousal support.

## 2. Child Support

In his third assignment of error, husband argues that the trial court erred in denying him child support. In its order, the trial court stated: "[Husband's] request for child support is hereby

denied for the reasons set forth in the attached Transcript." In the attached transcript, the trial court stated it was basing its decision on the parties' "earning capabilities" and on its prior ruling in the equitable distribution hearing. Specifically, the trial court found that, as with spousal support, the parties were "sort of almost in an interim" period and for the same reasons articulated in the equitable distribution hearing, there was "no reason to award support either way." The trial court also commended the parties for establishing trust accounts for their children's education.

In support of his argument on appeal, husband relies on the same contentions he raised in his argument for spousal support, without citing any further authority. Wife's sole argument against husband's assignment of error is that it fails to meet the requirements of Rule 5A:20(e). For the following reasons, this Court finds that husband argument is not waived and that the trial court abused its discretion.

### a. Rule 5A:20

Under Rule 5A:20(e), the opening brief must contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." "Statements unsupported by argument, authority, or citations to the record do not permit appellate consideration." Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008) (quoting Cirrito v. Cirrito, 44 Va. App. 287, 302 n.7, 605 S.E.2d 268, 275 n.7 (2004)). Thus, "when a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant, 'the Court of Appeals may . . . treat a question presented as waived.'" Id. (quoting Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008)). Alternatively, this Court may "address the merits of a question presented" if the failure is not significant. Jay, 275 Va. at 520, 659 S.E.2d at 317.

Although strict compliance with Rule 5A:20 is highly favored, in this instance this Court finds the deficiency in husband's argument insignificant. Husband's argument responds in kind to the trial court's rationale behind denying child support, which was to rely on the same reason it gave to deny husband's request for spousal support. In denying child support, the trial court explicitly stated it was denying an award because it "gave . . . quite a lot of dispensation in the [equitable distribution] hearing to [husband]" and consequently, it found "there [was] no reason to award support either way." For this reason, this Court finds that husband's argument is not waived on appeal and we turn to a review of the merits of this assignment of error.

### b. Child support award

"[D]ecisions concerning child support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Barnhill v. Brooks, 15 Va. App. 696, 699, 427 S.E.2d 209, 211 (1993). "In any judicial proceeding to determine child support, the court must consider all relevant evidence concerning *the needs of the child* and the ability of the parents to provide for those needs." Hiner v. Hadeed, 15 Va. App. 575, 578, 425 S.E.2d 811, 813 (1993) (emphasis added).

Code § 20-108.1(B) provides,

> there shall be a rebuttable presumption in any judicial or administrative proceeding for child support, including cases involving split custody or shared custody, that the amount of the award that would result from the application of the guidelines set out in § 20-108.2 is the correct amount of child support to be awarded.

The statute continues, "[i]n order to rebut the presumption, *the court shall make written findings in the order*, which findings may be incorporated by reference, that the application of such guidelines would be unjust or inappropriate in a particular case." Id. (emphasis added). These findings must state the presumed amount of child support under the guidelines and explain why

the trial court's award differs from this presumption.  Id.  Furthermore, the trial court's award must "be determined by relevant evidence pertaining to the . . . factors [in Code § 20-108.1] affecting the obligation, the ability of each party to provide child support, and the best interests of the child."  Code § 20-108.1(B).  "This affirmative duty is required to ensure that the award meets the requirements of [Code § 20-108.1(B)], including 'the best interests of the child.'"  Herring v. Herring, 33 Va. App. 281, 287-88, 532 S.E.2d 923, 927 (2000).

In this case, apart from the trial court's recognition of the existence of a trust account for the children's education, the entire reasoning for the court's denial of child support was based on the findings it made regarding the earning capacity of the parents and its award in the equitable distribution hearing.  There was no determination of the best interests of the children, no mention of the presumed amount to be awarded under the guidelines nor written justification for the court's deviation from that presumed amount, and little analysis of the factors in Code § 20-108.1(B),[6] as required by Code § 20-108.1.  A failure to abide by statutory requisites is, by definition, an abuse of discretion.  Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998).  Accordingly, the trial court erred in denying child support to husband.  On remand, the trial court is to provide the statutory analysis and determination of child support.

### D.  Fees and Costs on Appeal

Both husband and wife ask for an award of attorney fees and costs associated with these appeals.  "The appellate court has the opportunity to view the record in its entirety and determine whether [an] appeal is frivolous or whether other reasons exist for requiring additional payment."  Wright v. Wright, 61 Va. App. 432, 470, 737 S.E.2d 519, 537 (2013) (quoting O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996)).  Upon consideration of the

---

[6] Code § 20-108.1(B)(11) includes a consideration of the "earning capacity, obligations, financial resources, and special needs of each parent."

record and the assignments of error asserted by each party, this Court does not deem either party's appeal to be frivolous nor does this Court find other reasons warranting an award of attorneys' fees and costs.  Therefore, each party's request is denied.

## III.  CONCLUSION

For the foregoing reasons, this Court affirms in part, and reverses and remands in part. More specifically, the trial court is affirmed except that this Court (1) reverses the classification of husband's FVC stock, which this Court classifies as marital, and remands for equitable distribution; (2) remands the issue of the IRA for classification and equitable distribution; (3) remands the issue of the debts on wife's American Express and Chase Sapphire credit cards for classification and equitable distribution; and (4) reverses and remands the child support denial for application of the statutory criteria.

<u>Affirmed in part, reversed and remanded in part.</u>